| | |
|---|---|
| ZACHARY TAYLOR, | Civil No. 16-3573 (JRT/ECW) |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT** |
| STEARNS COUNTY JAIL; JOHN L. SANNER; MEnD CORRECTIONAL CARE, PLLC; ELAINE BYKER, MARTIN LANGENFELD; JODIE FRENCH; AND ASHLEY ALTENDAHL, | |
| Defendants. | |

Teresa Fariss McClain, **ROBINS KAPLAN LLP**, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for plaintiff.

Andrew A. Wolf and Jason M. Hively, **IVERSON REUVERS CONDON**, 9321 Ensign Avenue South, Bloomington, MN 55438, for defendants Stearns County Jail and John L. Sanner.

Charles Gross and Mark W. Hardy, **GERAGHTY O'LOUGHLIN & KENNEY, PA,** Alliance Bank Center Suite 1100, 55 East Fifth Street, St. Paul, MN 55101, for defendants MEnD Correctional Care, PLLC, Elaine Byker, Martin Langenfeld, Jodie French, and Ashley Altendahl.

Plaintiff Zachary Taylor brings this action under 42 U.S.C. § 1983 against Stearns County Jail ("SCJ"), and Stearns County Sheriff John Sanner (collectively referred to as the "SCJ Defendants"). Taylor alleges that SCJ violated his Eighth and Fourteenth Amendment rights by denying him adequate and timely medical care (Count One), and by

failing to adequately train its medical staff (Count Two).  Taylor realleges Count One against Sanner.  Both SCJ and Sanner now move for judgment on the pleadings, or, in the alternative, summary judgment of all the claims against them.  The Court will convert the Motion for Judgment on the Pleadings to a Motion for Summary Judgment, and, because SCJ is a non-suable entity and because Sanner did not commit any constitutional violations, the Court will grant the Motion.

Taylor also asserts Count One against MEnD Correctional Care, PLLC ("MEnD"), Martin Langenfeld, Elaine Byker, Jodie French, and Ashley Altendahl, (collectively referred to as the "MEnD Defendants").  He additionally claims that the MEnD Defendants were medically negligent (Count Three).  The MEnD Defendants now move for summary judgment of Count One.  Because the medical care provided by the MEnD Defendants did not violate the Constitution, the Court will grant the Motion.

**BACKGROUND**

**A.  Factual Background**

Taylor was arrested in St. Cloud, Minnesota, on March 21, 2014.  (Compl. ¶ 14, Oct. 25, 2016, Docket No. 1.)  During his arrest, he was tackled to the ground and, in the process, injured his left arm and wrist.  (*Id.*)  Requiring treatment, St. Cloud police took Taylor to the St. Cloud Hospital Emergency Department ("ED"), where an x-ray revealed that he had a broken left wrist.  (Aff. of Mark W. Hardy ("Hardy Aff.") ¶ 3, Aug. 31, 2018, Docket No. 44; Ex. A at 2, Aug. 31, 2018, Docket No. 45.)

The ED applied a splint to Taylor's wrist, and gave him several written discharge instructions, including to "follow up in ortho – call today to make an appointment in 5-7 days" and to "return for repeat evaluation if increase, changes, new or worsen symptoms." (Hardy Aff. ¶ 3, Ex. A at 2–3.) He was also provided with the name and address of an orthopedic care clinic and told to "[s]chedule an appointment as soon as possible for a visit in 1 week." (*Id.* at 3.) Finally, the ED prescribed Taylor oxycodone for pain management. (*Id.* at 3.)

After being discharged by the St. Cloud Hospital, St. Cloud police took Taylor to SCJ. (Compl. ¶ 16.) Because SCJ contracted with MEnD, a local medical center, to fulfill its duty to provide healthcare to inmates, MEnD was responsible for inmate healthcare at SCJ and privately employed its own medical staff to do so. (Answer ¶ 6, Dec. 27, 2016, Docket No. 7.) Elaine Byker, Jodie French, and Ashley Altendahl are all nurses who were employed by MEnD, and Martin Langenfeld is a physician's assistant. (*Id.* ¶ 7.) Though not a licensed physician, Langenfeld was the highest level of care that consistently examined patients at SCJ and ultimately made final treatment decisions.[1] Accordingly, the nurses reported to and received instructions from Langenfeld, and could not schedule outside medical appointments for inmates without a direct order from Langenfeld. (Aff. of Andrew A. Wolf ("Wolf Aff.") ¶ 8, Ex. 8 at 12, Aug. 30, 2018, Docket No. 37-6.)

---

[1] Todd Leonard, a physician and the owner of MEnD, stated that he would only visit SCJ "occasionally" and less than two times per week. (Aff. of Andrew Wolf ("Wolf Aff.") ¶ 20, Ex. 22 at 16, Aug. 30, 2018, Docket No. 37-18.)

On March 22, the day after his arrest, Altendahl examined Taylor at SCJ. Altendahl noted that Taylor had come in for a broken wrist, but did not otherwise substantially examine the wrist. (Hardy Aff. ¶ 4, Ex. B ("SCJ Records") at 1–2, Aug. 31, 2018, Docket No. 46.) Because March 22 was a Saturday, Altendahl's main goals in this first examination were to make sure the wrist was stable and that Taylor's pain was under control so that Taylor could wait until full-time staff came in the following Monday to more fully examine the wrist. (Hardy Aff. ¶ 5, Ex. C ("Altendahl Dep.") at 5–6, Aug. 31, 2018, Docket No. 47.) However, before he was examined by full-time staff, Taylor was assaulted by an inmate at SCJ, and subsequently underwent another general examination, this time by Byker. (Compl. ¶ 18–19.) Byker noted that Taylor was still experiencing wrist pain and told him that he would remain in a splint until he could see Langenfeld or possibly an orthopedic doctor. (SCJ Records at 3.) She also notified Langenfeld of Taylor's assault and told Langenfeld that Taylor should be seen on the next clinic day. (*Id.*) She did not order any x-rays on Taylor's wrist. (*Id.*)

Langenfeld first examined Taylor's wrist on March 27, six days after his arrest. (*Id.* at 4.) Langenfeld noticed significant issues with Taylor's wrist, such as the fact that it was discolored, its range of motion was limited, it was cool to the touch, and the area around the wrist had a capillary refill of four seconds. (*Id.*) Pursuant to his evaluation, Langenfeld extended Taylor's oxycodone prescription for another week, and established a plan of care for the wrist that would include continued splinting and pain medication, as well as additional examination as necessary should Taylor's symptoms worsen. (*Id.* at 4, 7.)

Langenfeld also had Taylor sign a release form which allowed Langenfeld to order the St. Cloud Hospital ED records, including the ED's x-ray images. (*Id.*) Langenfeld did not order additional x-rays on the wrist during his March 27 examination, because, in his medical judgment, additional x-rays were not warranted at that time. (Wolf Aff. ¶ 12, Ex. 14 ("Langenfeld Dep.") at 21, Aug. 30, 2018, Docket No. 37-10.) Consequently, because Langenfeld had not yet obtained the ED's x-ray images nor had x-rays taken on site, Langenfeld established his plan of care without having seen any internal imaging of the wrist. (Langenfeld Dep. at 26.)

While Langenfeld's plan of care included placing Taylor in a splint for the following four weeks and only then taking follow-up x-rays, (SCJ Records at 7), before the four weeks had elapsed, Taylor was transferred to the Minnesota Department of Correction's Stillwater facility and out of MEnD's control. (Compl. ¶ 26.) After being transferred to Stillwater, Taylor did not see a medical professional until May 6, when he was examined by Nurse Patti Ramler. (Compl. ¶ 27; Hardy Aff. ¶ 10, Ex. H ("MCF Records") at 1, Aug. 31, 2018, Docket No. 52.) Ramler, during this first examination, ordered x-rays of the wrist, and after reviewing the images, requested that Taylor be seen by an outside orthopedist. (MCF Records at 1.)

Pursuant to Ramler's request, Taylor's wrist was examined by Dr. Timothy Hiesterman at St. Cloud Orthopedics on May 12. (Hardy Aff. ¶ 11, Ex. I ("SCO Records") at 1–6, Aug. 31, 2018, Docket No. 53.) Hiesterman noticed that Taylor "ha[d] almost no motion of his wrist" and that the wrist showed signs of "malalignment and malunion." (SCO Records at 4.) As a result, Hiesterman recommended that Taylor undergo wrist

surgery. (*Id.* at 5.) The subsequent surgery took place on May 14, and Hiesterman noted in his post-operation report that the surgery was "extremely technically difficult" because the wrist had "fully healed in a malunited position." (*Id.* at 7–8.)

Believing that both MEnD and its medical professionals, as well as SCJ and Sheriff Sanner, provided him with constitutionally deficient medical care, Taylor filed this lawsuit in October, 2016. MEnD and its medical professional have filed a summary judgment motion on these constitutional claims, (Mot. for Summ. J., Aug. 31, 2018, Docket No. 40), and SCJ and Sheriff Sanner have filed a Motion for Judgment on the Pleadings or Motion for Summary Judgment in the alternative (Mot. for J. on the Pleadings, Aug. 30, 2018, Docket No. 33.)

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in a light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the nonmoving party "fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II. MEND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Langenfeld, Byker, French, and Altendahl

Taylor states claims against Langenfeld, Byker, French, and Altendahl, as individuals, under 42 U.S.C. § 1983 for violating his rights under the Eighth and Fourteenth Amendments. Each of them moves for summary judgment.

"The essential elements of a § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). Neither MEnD nor the individual defendants contest the fact that they were acting under color of state law. Thus, the question here is whether the individual defendants deprived Taylor of a constitutionally protected federal right, in this case Taylor's Eighth Amendment right to be free from cruel and unusual punishment.

"[A] prisoner's Eighth Amendment rights are violated when government entities or officials are deliberately indifferent to a prisoner's medical needs . . . ." *Spencer v. Knapheide Truck Equip. Co*., 183 F.3d 902, 905 (8th Cir. 1999). "Deliberate indifference is akin to criminal recklessness . . . ." *Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 499 (8th Cir. 2008). Allegations that only evidence misdiagnosis or medical negligence are insufficient to support a claim for cruel and unusual punishment, and "mere disagreement

with treatment decisions does not rise to the level of a constitutional violation." *Id.*; *see also McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) ("[n]egligent misdiagnosis does not create a cognizable claim under § 1983."). Consequently, it is difficult to establish deliberate indifference when medical care was provided to a plaintiff. *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990) ("[C]ourts hesitate to find an eighth amendment violation when a prison inmate has received medical care . . . .") (citations omitted).

Taylor's argument that the individual defendants were deliberately indifferent revolves around the claim that they failed to adhere to the St. Cloud Hospital's discharge instructions. Taylor argues that the ED's discharge notes to "follow up in ortho – call today to make an appointment in 5-7 days" and to "return for repeat evaluation if increase, changes, new or worsen symptoms" constituted prescribed and indispensable treatment instructions from the ED that the individual defendants should not have disregarded. Defendants argue, in response, that the discharge instructions constituted nothing more than suggestions made to Taylor by the ED doctor to assist him on the path to recovery, and that they were not meant to be binding on any subsequent medical professional.

In *Stewart v. Murphy*, the Fifth Circuit considered a similar scenario. 174 F. 3d 530 (5th Cir. 1999). The court in that case stated that a prison doctor's failure to follow outside recommendations "suggests nothing more than a difference in opinion as to the appropriate method of treatment under the circumstances." *Id.* at 535. Likewise, in *Blank v. Bell*, the Fifth Circuit held that a prisoner's claim that "he should have been seen by a specialist amount[ed] to a disagreement about his course of medical treatment" because the prison doctor had seen the prisoner personally and determined that the outside referral was not

necessary. 634 Fed.Appx. 445 (5th Cir. 2016). Such disagreements, the courts reasoned in both cases, sounded only in negligence.[2] *Id.*

*Clark v. Colbert*, presents another remarkably similar scenario. 2017 WL 3081722 (E.D. Okla. 2017). In that case, a prisoner had been given discharge instructions directly prior to entering a prison which "advised he should have a follow-up with . . . Tulsa Bone and Joint within 7-10 days, follow-up with St. John Trauma Service as needed—only if needed, follow-up with Barry Eisen of St. John Clinic—Gastroenterology as needed, and a follow-up with his primary care provider within 3-4 days." *Id.* at *2. The prisoner, upon entering the prison, was seen by the prison's certified advanced nurse practitioner, who examined the prisoner but did not make any follow-up appointments. *Id.* at *3. Despite this, the court found no evidence of deliberate indifference, stating that detainees "are not entitled to receive . . . care from any specific provider" and that the practitioner was a qualified primary care provider. *Id.* at *10. Further, the court held that "decisions as whether to consult a specialist or undertake additional medical testing" were ones of medical judgment properly in the purview of the practitioner. *Id.* (quoting *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006)).

---

[2] In *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018), the Sixth Circuit followed *Blank* in holding that a prison doctor's implementation of one plan of care instead of one recommended by an outside doctor did not amount to conscious disregard. *Id*. at 744. Key to the Sixth Circuit's decision was the fact that the prison doctor had not simply disregarded the recommendations of the outside doctor without examining the patient personally, but instead reviewed the recommendations and made her own determinations as to the correct plan of care. *Id.*

Though not binding on the Court, these cases are instructive and applicable here. While it is true that Langenfeld and the nurses were generally aware, or should have been, that the ED had recommended an orthopedic follow-up to Taylor, the discharge instructions do not have the import Taylor suggests. Instead of vital and necessary treatment, the ED's discharge instructions constituted nothing more than information that Taylor, a layperson, would need to move forward with his medical care on his own. They were not binding on Langenfeld, who is entitled to make his own medical conclusions when examining an individual.[3] *See Long v. Nix*, 86 F. 3d 761, 765 (8th Cir. 1996) (noting that prison doctors remain free to exercise their independent medical judgment.) Further, Taylor—and his wrist—were not simply disregarded upon entering the jail. Langenfeld and the nurses examined Taylor and, instead of referring him to a specialist, implemented their own treatment plan based on their own observations. Langenfeld made a medical determination that the recommended follow up was not necessary, and the nurses relied on his judgment. To the extent that Taylor disagrees with Langenfeld or the nurse's decisions, such disagreements sound in negligence, not deliberate indifference.

The treatment decisions made by Langenfeld and the nurses were undoubtedly questionable, particularly in hindsight. However, Taylor has not provided any evidence that the treatment decisions were so egregious as to surpass negligence and rise to the level

---

[3] While Langenfeld is a physician's assistant, the Court believes that, in this case, he is entitled to the same level of deference as a licensed physician. Langenfeld was familiar with distal radius fractures, had treated them before, and testified substantially about the general process he uses in situations like the one here. (Langenfeld Dep. at 6-9.)

of a constitutional violation. Accordingly, because Langenfeld, Byker, French, and Altendahl were not deliberately indifferent, the Court will grant their Motion for Summary Judgment.

### B. MEnD Correctional Care, PLLC

To plead a prima facie § 1983 case of deliberate indifference against a corporation acting under the color of state law, such as MEnD, Taylor must show that the corporation had (1) a policy, practice, or custom attributable to the corporation through actual or constructive knowledge; and (2) that the policy, practice, or custom directly caused the constitutional injury. *Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1094 (8th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). This is because a claim based on respondeat superior is "not cognizable under § 1983." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993).

"[A]bsent a constitutional violation by an . . . employee, there can be no § 1983 . . . liability" for the organization. *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 860–61 (8th Cir. 2018); *see also Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018) ("[O]ur case law has been clear since *Praprotnik* that there must be an unconstitutional act by a municipal employee before a municipality can be held liable.") (quotations omitted). Because the Court concludes that no individual employee's actions violated the constitution, the Court necessarily concludes that MEnD, as a corporation, did not violate

Taylor's Eighth Amendment rights. Thus, the Court will grant MEnD's Motion for Summary Judgment.[4]

## III. SCJ DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

### A. Conversion of Motion for Judgment on the Pleadings

"If, on a motion under . . . Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Matters outside the pleadings can be "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (quoting Wright & Miller, Federal Practice and Procedure § 1366). Because the Court will consider evidence outside the pleadings, including the affidavits provided, the Court will convert the SCJ Defendants' Motion into one for summary judgment.

---

[4] Even if the Court held that any of the individual MEnD defendant's actions violated Taylor's rights, he would still fail to show that MEnD is liable. The policy he cites—that the nurses at MEnD were unable to schedule outside appointments—does not support the necessary "direct causal link" to Taylor's injury. *Gatlin*, 362 F.3d at 1094. Additionally, the custom he cites—that MEnD's doctors did not provide sufficient oversight of MEnD's physician assistants—does not support organizational liability. In order for a custom to serve as the basis for organizational liability, it must have caused more than one constitutional violation. *See Jenkins v. Cty. of Hennepin, Minn.*, 557 F.3d 628, 634 (8th Cir. 2009) ("'[l]iability for an unconstitutional custom . . . cannot arise from a single act.'") (quoting *McGautha v. Jackson Cty., Mo., Collections Dep't*, 36 F.3d 53, 57 (8th Cir. 1994)). Taylor failed to provide evidence of any other constitutional violations caused by his alleged custom.

Generally, the Court must provide the parties with notice and an opportunity to provide further materials if it intends to convert a Motion. Fed. R. Civ. P. 12(d). However, this is not an absolute rule. "Where the movant designates its motion to dismiss alternatively as a motion for summary judgment, and the nonmovant submits materials outside the pleadings, a district court is not required to give formal notice that it will treat a motion as one for summary judgment." *Hearing v. Minnesota Life Ins. Co.*, 793 F.3d 888, 893 (8th Cir. 2015) (citing *Madewell v. Downs*, 68 F.3d 1030, 1048 (8th Cir. 1995); *see also Angel v. Williams*, 12 F.3d 786, 788 (8th Cir. 1993) (finding adequate notice where a defendant asked for summary judgment in the alternative and the plaintiff submitted exhibits and affidavits in response). Here, SCJ moved for summary judgment in the alternative, Taylor cited affidavits and documents received during discovery, and even argued, albeit briefly, against summary judgment. The Court finds that Taylor was sufficiently notified.

### B. Stearns County Jail's Motion for Summary Judgment

Because jails are considered units of the cities and counties involved, they are "not legal entities amenable to suit." *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *see also De La Garza v. Kandiyohi Cty. Jail, Corr. Inst.*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (collecting cases). Thus, the Court will grant SCJ's Motion for Summary Judgment and dismiss Counts One and Two against it.

### C. Sheriff John Sanner

#### i. Official Capacity Claim

Taylor asserts a § 1983 claim against Sanner in his official capacity as Sheriff of Stearns County. When an action is brought against an officer in his official capacity, the suit is treated as an action against the municipality. *Bankhead v. Knickrehm*, 360 F.3d 839, 844 (8th Cir. 2004). Thus, the Court examines Taylor's § 1983 official capacity claim under the municipality standard, wherein a municipality may be held liable under § 1983 only if a plaintiff identifies a particular policy, custom, or practice that resulted in the alleged constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, 386–87 (1989); *Brockington v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007).

Even liberally construed, neither the complaint nor any argument submitted by Taylor contains any facts that identify a policy or custom on the part of Sanner or Stearns County that might have led to Taylor's injury. At his most specific, Taylor alleges that "Sanner, in his official capacity, caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevailed at SCJ" and that he has "therefore caused, and will continue to cause in the future, many of the damages, injuries and violations set forth below." (Compl. ¶ 8.)

Instead of identifying a Stearns County policy, Taylor suggests that Sanner, in his official capacity, is liable for MEnD's actions because "[a] jail's duty is not absolved by contracting with an entity such as MEnD" and that "the county itself remains liable for any constitutional deprivations caused by the policies or customs" of MEnD. (Mem. in Opp. at 34, Sept. 20, 2018, Docket No. 65.) Because the Court holds that neither MEnD nor MEnD's employees violated Taylor's constitutional rights, there is no basis to find Stearns

County liable, even if Stearns County could be vicariously liable for MEnD's actions. Thus, the Court will grant Sanner's Motion for Summary Judgment of the claims against him in his official capacity.

    **ii.    Individual Capacity Claim[5]**

As stated above, the relevant questions regarding an individual defendant here are: "(1) whether [Taylor] had a serious medical need . . . and (2) whether [Sanner] had knowledge of such serious medical need . . . but nevertheless disregarded it." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 529 (8th Cir. 2009).

Similar to Taylor's official capacity claim against Sanner, Taylor has failed to provide any facts that Sanner, in his private capacity, committed any constitutional violation. Nowhere does Taylor allege any personal involvement by Sanner, nor that Sanner was even aware of Taylor before Taylor brought this lawsuit. Absent some individualized knowledge on the part of Sanner of Taylor's serious medical need and an individualized assessment that Sanner was deliberately indifferent to those needs, Sanner cannot be liable for deliberate indifference.

Moreover, even if there was some indication that Sanner knew of Taylor's serious medical need and that the St. Cloud ED had recommended orthopedic follow-up, it is unlikely that Sanner would be found liable for a constitutional deprivation of care. "A prison official may rely on a medical professional's opinion if such reliance is reasonable."

---

[5] The parties disagree over whether Taylor named Sanner in his individual capacity. Because the Court will find that Sanner did not commit any constitutional violations, the Court need not decide the issue.

*McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) (citation omitted). "The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002).

Because Taylor has provided no facts linking Sanner to Taylor's injury, the Court will grant Sanner's Motion for Summary Judgment of the claims against him in his individual capacity.

## IV. CONCLUSION

Because Taylor has failed to show that the care provided to him by the MEnD Defendants and Stearns County Jail was constitutionally inadequate, the Court will dismiss all of Taylor's 42 U.S.C. § 1983 claims. However, Count Three, in which Taylor alleges medical negligence against MEnD and its medical professionals, remains and is ready for trial.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Stearns County Jail and Sheriff John Sanner's Motion for Judgment on the Pleadings and/or Summary Judgment [Docket No. 33] is **GRANTED**. Defendants Stearns County Jail and Sheriff John Sanner are hereby dismissed from this case.

2. Defendants MEnD Correctional Care, PLLC; Martin Langenfeld; Jodie French; and Ashley Altendahl's Motion for Partial Summary Judgment [Docket No. 40] is **GRANTED**. Taylor's 42 U.S.C. § 1983 claim against these defendants is **DISMISSED** with prejudice.

3. This case will be placed on the Court's next available trial calendar.

DATED: February 27, 2019                ____s/John R. Tunheim____
at Minneapolis, Minnesota.                     JOHN R. TUNHEIM
                                                                   Chief Judge
                                         United States District Court